Good afternoon. My name is Charles Wilson, may it please the court. I represented Louis Cosme in the proceedings before the district court in Hartford with Judge Shea, and I am here on his behalf. In the appeal, we've raised two issues. One, I think I can put to the side rather quickly. We've argued that the court should not have a judge in the district court. We've argued that the court should vacate the conviction for a lack of subject matter jurisdiction arising out of the defect in the indictment when we consider what happened in Rahafe. I recognize that the Court of Appeals has rejected this position. So essentially, at this point, I'm just leaving it to rest on my papers so as to preserve it for further consideration down the road. The other issue, though, appears to be a live one, that being that the court should vacate the conviction because Mr. Cosme's guilty plea never addressed this element that we see discussed in Rahafe. The idea of having knowledge that a person belongs to a class of people who are prohibited from possessing firearms. The government and I appear to be in agreement that there was error, that the error is clear or obvious. We part ways when it comes to the two questions of whether the error affected the defendant's substantial rights or seriously affects the fairness, integrity, or public reputation of the judicial proceedings. In looking at the briefing, there is essentially two key issues that address this point. One is certainly Mr. Cosme's criminal record, and then the other is his limited functioning. The government highlights one or two areas in the record where they claim he made an admission, and I'll get to that last. As for the criminal record that Mr. Cosme presents with, I'm not going to say it's short. If you look at paragraphs 42 through 58 in the pre-sentence report, it's a litany of convictions over a significant period of time. However, if you look a little more deeply, there are things that distinguish Mr. Cosme's criminal record from those discussed in the cases where the court has rejected an effort by a defendant to have the court apply Rahafe. In particular, he does not have the very long sentence that some of those defendants have had. For example, in the very recent Johnson case, the defendant had four prior convictions. Why does that make a difference, whether there's been a prior long sentence? Well, from my reading of the cases, and I do have a list available in case the court wants it, when you look at the decisions and they're saying that there isn't any real prejudice, they tend to look at the existence of prior convictions, of course, but there's often a reference to how long the defendant previously served. Counsel, how realistic is it that somebody who had six felony convictions, albeit the last was some six years ago, but six felony convictions, even though they weren't huge sentences, wouldn't know that he was a felon. I mean, and that, on this point, in plain error, is the issue. And that's apart from the fact that he said, I'm a felon. But isn't that, isn't this case a remarkably, you know, whatever one thinks of this rule, but remarkably easy in terms of, yeah, he knew. Your Honor, if I could piggyback on to Judge Calabrese's comment, not only did he have those six convictions, but he was sentenced three times, I believe, to more than a year in prison, once to two years, once to 15 months, once to three years. And I'm not clear exactly how long he actually served, but those very substantial sentences on top of what Judge Calabrese was pointing out make it very difficult for me to think that there's a reasonable possibility that even with the intellectual challenges that he faces, he would not have appreciated that he had been convicted of felonies, that he did not know in possessing the gun that he was a felon. And that was unlawful. So I'm going to try to address both questions and take them in reverse order. As to the three particular convictions, yes, those are in paragraphs 50, 51, and 53 of the pre-sentence report. One is 15 months. In Connecticut, it is unlikely that someone who receives a 15-month sentence for possession of narcotics, as was the case there, would serve a year. There's a very good chance they would release probably somewhere around 55 percent of the sentence. Similarly, although the numbers obviously are getting longer, a two-year sentence involving sale of narcotics would not be considered a violent offense.  Let's factor into that another consideration. So he would have been released at what point if he was a two-year sentence? Because if it's 55 percent, then we're over a year again, right? Well, that's the point I wanted to address specifically. So let's say it's somewhere – it's really 50 percent plus a day is usually sufficient, but generally speaking, that doesn't happen. It usually is about 55 percent in my experience. But keep in mind also that there is a decent chance that Mr. Cosme would have served some period of time effectively before he was sentenced in the case. So he may have walked out of the courthouse in cuffs, but he may have arrived in cuffs. And so his understanding of what he's really getting is unclear. As to the three-year sentence, which obviously is the biggest issue in terms of when we look at them individually, he also appears to be getting sentenced or at least consideration in connection with his prior conviction in Paragraph 52, where he had a seven-year suspended sentence, three years probation. But that probation was terminated on the same day he was sentenced as to assault second. And it's our position that when someone is sentenced for a violation of probation, it may not be clear to the person that they're being sentenced tying back to the prior case. They're being sentenced for a violation of probation, which really is in some ways a civil proceeding. It doesn't sound like a felony. What about in your remaining one minute, what about the point that he told the detectives that he didn't have a valid pistol permit because I'm a felon man? Right. So then I do want to get Judge Calabrese's question in as well, which I think ties into your question, Judge Chen. The significant number of convictions, you know, normally I would say that's the end of the discussion. But when we consider the facts that are in the expert report to which the government did not object during sentencing, which established quite clearly that Mr. Cosme is a man of limited functioning. While we would like to think that over time he would have grasped the concept, you know, and ultimately we never would have been here. We would like to think that that's inconsistent with the fact that he has a condition. You know, he has limited intelligence. So this isn't someone who's necessarily going to figure it out one day. Now, his statement that I'm a felon man when he gets arrested, which isn't necessarily a statement. That's a summary of a police report, which obviously could be tested in a different context through a motion to suppress. But assuming that that did actually occur and that would be admissible at a trial. What is – to get back to something that Judge Carney was asking earlier, what is the reasonable probability? What is the probability that he would have insisted on going to trial had he been advised that the government had to prove knowledge of a prior felony conviction? Well, Judge, I mean, in all fairness, that's a hypothetical question. And so what is the probability? At this point, I don't – I'm sorry? That hypothetical question is the question we have to ask ourselves. Because it is not unjust in terms of plain error unless there is a reasonable chance that he would have insisted on going to trial. So that hypothetical question, looking at all the facts involved with your client, whether it is reasonable to think that had he been informed that he should have been, that the result would have been any different. I think that's a question that would have taken significant counseling. It's a more complex question than just you had a gun when you got arrested, right? And then putting aside the interstate commerce piece of it, which we go over a report. The government provides us with the report. We accept it as true. The idea that he knew the underlying nature of his crimes is a longer stretch, especially for someone who has his limitations. All right. You're over your time. You have three minutes for rebuttal. We'll hear from the government. Yes, thank you. Good afternoon. On behalf of the United States, I may please the court. I'm Mike Gustafson, the U.S. Attorney's Office from the District of Connecticut. I was counsel at the district court level. Mr. Wilson aptly frames the issue for the court. I don't think the jurisdictional issue is really what we need to discuss in light of Baldy. With respect to the rule 11 defects, the government does acknowledge that because written right, he had not yet been decided at the time of the guilty plea and or the sentencing. We didn't really not really. We didn't address the issues we're talking about today. But having said that, we do point to two key factors that would clearly suggest and show that Mr. Cosby absolutely understood his status as a felon in April 2017 when he had the gun. He literally said to the police, it's government's contention. He understood that he could not get a pistol permit because he was a felon. And what better proof of that would be the three clean, what I'll call clean sentencing's. Judge Carney pointed to those earlier in paragraphs 50, 51 and 53 of the pre-sentence report. All four as a pre-sentence report notes jail sentences of more than a year. And obviously, as a felon, the status as a felon, the definition is you're exposed or convicted of a crime punishable by more than a year imprisonment. You don't have to do a year. You just have to be exposed to a crime that's punishable by more than a year in prison. And the pre-sentence report and a lot of the other paragraphs starting at 42 through 50, it makes notes of a jail sentence, for example, of one year suspended, four years suspended. So there are instances when it's very clear that Mr. Cosby received suspended time. Mr. Wilson also points out that in Connecticut, a defendant might do 55 percent of his time if it's a drug case. I think it's 80 or 85 percent of it's considered a violent crime. But regardless, that's with good time credit. That's not automatic. And I was looking at direct the court's attention to the pre-sentence report. I think it's paragraph 69, which indicates that while in the Department of Correction for the state of Connecticut, Mr. Cosby received a total of 66, 66 disciplinary tickets for various conduct. And the pre-sentence report amplifies that. So I don't know whether Mr. Cosby ever did get the credit for good time that might have taken a 15 month sentence and transfer transferred it into something less than a year in jail. But to the court's point about what does it really matter, I think it's a great point. A sentence of three years, a sentence of 15 months, a sentence of two years, they are all longer than the one year that we would look for a felony conviction. Let me ask you, sir, if I could. I mean, it's pretty clear that Mr. Cosby has really very significant limitations in his understanding. In fact, that might count for some of the 66 tickets that he received while incarcerated. And, you know, this record, while extensive, is spread out over a long period of time and sentencing is confusing. And it's confusing to us to look at the sentence opposed and know that you may be just over 55 percent or 50 percent plus a day or what have you. And exactly what is punishable by what amount, you know, it's not it's not obvious. And, you know, if there's a chance that his statement could have been suppressed, we're all that it was made and it was appropriate. But, you know, that's open to charge, you know, to being assailed. I did struggle a little bit to reach the conclusion that it's we can comfortably believe that Mr. Cosby would have not put the government to it. It's proof that he knew that he was a felon, that he had been in fact convicted of felonies. Is there anything you can point to? You know, we've talked about the numerosity of the convictions and the amount served. But again, given the time that lapsed and so on, is there anything in his psychological assessments that was done that we could latch on to to get comfort that he actually did appreciate that he was a felon and was therefore not allowed to possess a gun? Thank you, Your Honor. I went through before the argument that I went through the psychological report and I don't think there's anything in there to answer your question directly. That's going to give comfort to the court from that perspective. I would note that, frankly, oftentimes a person with limited mental capacity or limited function, and there's no argument that that's certainly a factor in this analysis. And in this case is exposed to a criminal justice system more than the average citizen or average person. And for better or worse, becomes acquainted with the terms and the rules about when probation kicks in and what's a felony and what's not. Under Rahif, what does he need to know? That he was in the particular status that the government charges. In this case, it was a felon, that he had a prior felon conviction, that he had been – Well, is it just that he has a prior felon conviction or that he had to have been sentenced to more than a year or what? That he has been convicted of a crime punishable by a term of imprisonment, not actually sentenced to a term of imprisonment, but punishable by a term of imprisonment of more than one year. And that's why the government is relying on those three particular convictions as the best proof. So that is actually not that simple a concept, that you are punishable, not that you are sentenced necessarily. I think it becomes a simpler concept when, in fact, you are told that you'll be in jail for 15 months or two years or three years, regardless of what your exposure – regardless of what your ultimate exposure was. The other thing I was – I'm sorry, Your Honor, I want to go back to Judge Carney's question. I do note at the time of the guilty plea – now, granted, it's not absolutely 100 percent dispositive, but Mr. Cosby was advised during the guilty plea process what a felony was. And the government has actually told him it's punishable by a term of imprisonment of more than a year. And then on page 78 of the government's appendix, Judge Shea said, one more question, Mr. Cosby. Is it true that before April 10, 2017, before the day on which you had the gun in the car, you were convicted of a felony at any time? He answered yes. Now, I guess the argument would be for Mr. Wilson in a moment, well, he didn't know that or we don't know that he knew that back in April. He knew that at the time of his guilty plea months later. But I do think it shows that Mr. Cosby is a person, although with limited mental capacity and functioning ability, was aware of the status as a felon. He would have theoretically gotten a permit to get a gun. Is there anything in the record that suggests that his mental limitations made it difficult for him to understand that he had been convicted of felonies? There are any number of mental limitations. A person may have a terrible memory. A person may not be able to add two and two. But what we have to figure out is, is there something about his limitations that would have made it hard for him to know what he had to know on the day? That's what I'm struggling with. Thank you, Your Honor. Obviously, Mr. Wilson, I don't know if he'll be on his feet, but he'll be addressing the court in a moment. And he may point to something, but I'm not familiar with anything in the record that would support that conclusion. Mr. Cosby absolutely had post-traumatic stress and anxiety issues and generally a low IQ, but he was taking literacy courses prior to sentencing. So I think he had the ability to educate himself and to comprehend things. So I would say no. He was competent to plead guilty also, of course. Yes. Thank you. You have a minute left. Well, thank you, Your Honors. I note that earlier today, actually this morning, this court in U.S. v. Miguel Fuentes, docket number 19-1639, concluded that a 30-month prior jail sentence was sufficient to show the defendant knew of his status as a felon. We've got other cases that this court has decided over the months. Last week, U.S. v. Lawrence Johnson. I can provide the court with these sites as well. U.S. v. Anthony Smith from May 26th. Cases where, well, in Anthony Smith, the sentence was two instances of sentences of more than a year. Wilbert Hayes from April. Christopher Mucalinich, that's 798, Appendix 697. That one, the defendant had a prior sentence of 15 months in jail. So there is support for the proposition the government puts forth today that Mr. Cosme's prior jail sentences would be sufficient to sustain the showing that he understood he was a felon. So the government submits at the end of the analysis that this conviction should be affirmed. Thank you. Thank you. We'll hear the rebuttal. Mr. Wilson? Yes, Your Honors. So, first of all, the lack of literacy is a key piece of this. A defendant's inability to read the charge, to read a statute, things of that nature is, you know, is a significant step backwards or, you know, a significant deficiency coming into the process. So when we look at the record, there are indications about how he would fall behind on top of the fact that his IQ is low and the other deficiencies described in the report. You know, his literacy level, he wasn't moving from reading Johnny Tremaine to, you know, William Faulkner. This is a guy who was reading picture books at best that, you know, my kindergarten age kids, when they were that age, could read. So he was significantly limited. He was doing well at a period of time, but he was significantly limited. The cases that the government refers to, I'll address in a second, but, you know, the question about, he says, I'm a felon. That is a label he gave himself. And the problem is that we don't know what that means. And when you look at 922G, the charging statute in question, it doesn't have the word felon in there. You know, it has a definition of something that we all may refer to in shorthand as felon. So that way, you know, when Mr. Gustafson tells me about a new arrest, he says felon in possession. I instantly know what he's talking about. But obviously, that term has now changed in light of Rahafe. So there's that to consider. But in terms of the cases, I'm not familiar with the Fuentes case that just came out today. But the Milkenovich case where the person received 15 months, that prior sentence for 15 months, I believe, may have been a federal sentence. For pleading guilty to being a felon in possession. When you look at the Hayes case, there isn't a lot in the decision about the person's priors. The government supplemental brief, however, notes a few different priors, at least a couple of which had very long sentences. In the Smith case, one of the priors at issue was a six-plus-year sentence that the person had served. Or the person had served six-plus years prior to having the federal case. One minute. Your Honor, in terms of Mr. Cosme's criminal history, I understand that I might be trying to put Band-Aids on a death by a thousand cuts. But there are distinctions here from the cases that have already been decided that are favorable to Mr. Cosme. And one of the things I don't see in any of those cases is someone with his limitations that gives him some sort of defense that could have been pursued. So unless the panel has any further questions, I'll let my last 20 seconds go. Thank you. The court will reserve decision.